*M.M. v. New York City Department of Education*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of July, two thousand sixteen.

Present:

> PIERRE N. LEVAL,
> DEBRA ANN LIVINGSTON ,
> SUSAN L. CARNEY,
> *Circuit Judges*.

_____

M.M., ON BEHALF OF AND AS PARENT OF J.S., A STUDENT WITH A DISABILITY,

*Plaintiff-Appellant*,

v.                                                                15-1200-cv

NEW YORK CITY DEPARTMENT OF EDUCATION,

*Defendant-Appellee*.

_____

| | |
|---|---|
| For Plaintiff-Appellant: | ERIN MCCORMACK-HERBERT, Thomas Gray, Partnership for Children's Rights, New York, NY. |
| For Defendant-Appellee: | Deborah A. Brenner, DIANA LAWLESS, for Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY. |

**UPON DUE CONSIDERATION WHEREOF** it is hereby **ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant M.M., the parent of J.S., a 22-year-old male with autism, appeals an award of summary judgment in favor of Defendant-Appellee New York City Department of Education ("DOE") on M.M.'s claim for reimbursement of private education expenses under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq. See M.M. ex rel. J.S. v. N.Y.C. Dep't of Educ.*, No. 14 Civ. 1542, 2015 WL 1267910 (S.D.N.Y. Mar. 18, 2015). We review the award of summary judgment *de novo,* although in the IDEA context we do so mindful that "the responsibility for determining whether a challenged [individualized education program ("IEP")] will provide a child with [a free and appropriate public education ("FAPE")] rests in the first instance with administrative hearing and review officers." *M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.,* 725 F.3d 131, 138 (2d Cir. 2013). We assume the parties' familiarity with the underlying facts and procedural history of the case, and with the issues on appeal, which we describe here only as necessary to explain our decision to affirm.

The IDEA provides states with funds to ensure that "all children with disabilities" receive a FAPE. *Cerra v. Pawling Cent. Sch. Dist.,* 427 F.3d 186, 192 (2d Cir. 2005). A state receiving these funds must then create an IEP for each qualifying student, tailored to that child's abilities and needs, *see* 20 U.S.C. § 1414(d), which is "reasonably calculated to enable the child to receive educational benefits." *Bd. of Educ. v. Rowley,* 458 U.S. 176, 207 (1982). If a parent believes that her child's IEP does not comply with the

2

IDEA, the parent may file a "due process complaint" with the appropriate state agency. *See* 20 U.S.C. § 1415(b)(6).

On appeal, M.M. asserts that the district court erred in affirming the State Review Officer's ("SRO's") determination. M.M. argues principally that the DOE failed (1) to determine with M.M. at J.S.'s IEP meeting and to specify in J.S.'s IEP the mandated frequency, location, and duration of J.S.'s transition services, *see* 20 U.S.C. § 1414(d)(1)(A)(i)(IV), (VII), and (2) to conduct a mandated triennial evaluation of J.S., including required vocational and transition assessments, *see* 20 U.S.C. § 1414(a)(2)(B)(ii). These procedural defects, M.M. contends, denied J.S.'s right to a FAPE. We disagree.

Procedural violations result in the denial of a FAPE only "if they [1] 'impeded the child's right to a [FAPE],' [2] 'significantly impeded the parents' opportunity to participate in the decisionmaking process,' or [3] 'caused a deprivation of educational benefits.'" *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 190 (2d Cir. 2012) (citations omitted). "Multiple procedural violations may cumulatively result in the denial of a FAPE even if the violations considered individually do not." *Id.* In assessing whether such a denial has occurred, we give "due weight" to the state proceedings, affording particular deference where state administrative "review has been thorough and careful." *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 240-41 (2d Cir. 2012).

While the SRO did not specifically address in his March 18, 2014 decision the application of the IDEA's "frequency, location, and duration" requirement to J.S.'s recommended transitional and vocational services, *see* 20 U.S.C. § 1414(d)(1)(A)(i)(IV), (VII), the SRO discussed the IEP's provision for those services at length. The SRO

3

thoroughly and carefully reviewed the IEP's transitional and vocational components, properly using testimony to explain how these services would be implemented. *See R.E.*, 694 F.3d at 185-87. As pertinent here, the SRO recognized that "the May 2012 IEP did not specifically break down how much time the student would receive academic instruction compared to how much time the student would receive vocational instruction." J.A. 170.

The failure to specify whether J.S.'s "classroom" would be onsite or offsite and what proportion of those classroom sessions would be devoted to vocational or academic instruction may well have constituted a procedural defect in the IEP. But even assuming that this omission constituted such an error, it neither "impede[d J.S.'s] right to a [FAPE]," nor did it result in an IEP that "significantly impeded [M.M.'s] opportunity to participate in the decisionmaking process." *R.E.*, 694 F.3d at 190. On the basis of testimony and a review of the IEP itself, the SRO determined that the IEP's discussion of the vocational program, when coupled with the IEP's annual goals and services sections, provided sufficient information to allow the school to develop a vocational program capable of providing J.S. with a FAPE. *See id.* at 186 (SRO may properly credit testimony that "explains or justifies the services listed in the IEP"). Likewise, the extent of M.M.'s engagement with the IEP process and the timing of her objection to J.S.'s vocational placement confirm that the DOE did not "significantly imped[e M.M.'s] ability to assess the adequacy of the IEP." *T.K. v. N.Y.C. Dep't of Educ.*, 810 F.3d 869, 877 (2d Cir. 2016). As the SRO noted, M.M. was involved in "important junctures in development of [the] IEP," obtaining an independent evaluation of J.S., providing it to

4

the committee charged with developing the IEP, and participating in the May 2012 meeting at which the IEP was prepared. *Id*.

As to M.M.'s second argument, we agree that the DOE should have performed a reevaluation of J.S. at least once within the three years preceding the May 22, 2012 IEP meeting. *See* 20 U.S.C. § 1414(a)(2)(B)(ii). Nevertheless, "[a]lthough the applicable statutory provision does mandate the DOE to conduct a triennial reevaluation of a student at least every three years, the lack of such a reevaluation in this case did not render the IEP inappropriate." *M.M. ex rel. J.S.*, 2015 WL 1267910, at *5. The SRO, after "thorough and careful" review of the record, *M.H.*, 685 F.3d at 241, determined that the committee that had developed J.S.'s IEP had before it "sufficient evaluative information," J.A. 165. The committee had before it three reports concerning J.S. In addition, the committee "considered input" from M.M. and two teachers affiliated with the school in which J.S. was enrolled at the time, including his "then-current English language arts teacher." J.A. 165. According the SRO's opinion "due weight," we conclude that the DOE's procedural violation did not deny J.S. a FAPE. *M.H.*, 685 F.3d at 240.

We have considered M.M.'s remaining arguments and find them to be without merit. Accordingly, we AFFIRM the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

5